The Honorable_____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| J. FRANKIE JURKOWSKI, AARON DONNY-CLARK, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF SEATTLE, Assistant Chief Steve Wilske, Captain Chris Fowler, John Doe 1, Jane Doe 1, John Doe 2, Jane Doe 2, <br><br> Defendants. | No. 2:15-cv-1155 <br><br> **COMPLAINT** <br><br> **JURY DEMAND** |

## NATURE OF ACTION

1. At the May Day demonstration on May 1, 2015, Plaintiff Frankie Jurkowski was working as a medic. It was easy to tell Jurkowski was a medic because she wore florescent pink tape in the shape of a cross on her back and arms. She also had a red cross Puget Sound Medic Collective emblem patch on her bag. She has training as a medic and her actions at the protest made it plain she was a medic. She

COMPLAINT – Page 1

LAW OFFICES OF
H ARRY  W ILLIAMS  L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
TELEPHONE: (206) 769-1772

1  was doing what a medic does: tending to injured people. Jurkowski treated several
2  injuries during the event.

3      2.    When she was moving to assist an injured individual near the Montana
4  bar, a police officer threw a ball blast grenade at Jurkowski. The officer threw this
5  grenade while Jurkowski was some distance from any officers. He or she threw this
6  grenade without warning. The grenade hit Jurkowski and exploded at the same time.
7  The shrapnel from the grenade burned through Jurkowski's pant leg, ripped through
8  Jurkowski's leg, and caused large painful hematoma burns. A picture says a thousand
9  words: below is what the grenade did to Jurkowski's leg.

COMPLAINT – Page 2

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
TELEPHONE: (206) 769-1772

3. The officer who threw the grenade at Jurkowski had received extensive training in use of the weapon.

4. At almost the same time, Jurkowski was shot with a nonlethal weapon by another police officer. The officer aimed a 40mm launcher at Jurkowski and shot her with a "blue tipped impact sponge." While the weapon was designed to inflict pain rather than death, she was shot by an officer. To shoot Jurkowski, the officer had to aim the weapon at her and make a decision to fire the weapon. Although she was non-violent, not interfering with any police activity, not ignoring any police order, and acting as a medic, the officer decided to inflict pain on Jurkowski. The officer who shot Jurkowski received extensive training with the weapon. Her or his shooting must have been deliberate.

5. Jurkowski was not arrested for her actions on May Day; peaceful political protest is legal in Seattle.

6. Since Jurkowski was not engaged in illegal actions, no use of force was justified, much less the degree of force used.

7. Since Jurkowski was acting as a support to citizens and as a nonviolent medic, no use of force was justified, much less the degree of force used.

8. Jurkowski acts as a medic at protests to encourage and support speech protected by the First Amendment. Jurkowski exercises her own First Amendment rights by acting in this role, which is central to her engagement as a citizen.

9. Jurkowski's plan on May Day was to support all the activities where people were exercising their right to speak until the protest ended or had dispersed.

10. Jurkowski's injuries forced her to leave the protest. She was unable to exercise her rights because of police violence against her.

11. Plaintiff Aaron Donny-Clark is a veteran of the wars in Iraq and Afghanistan. On May Day 2015, he sought to exercise the constitutional rights he

COMPLAINT – Page 3

1  protected while in the military. In response, the Seattle Police Department tossed
2  grenades at him, causing him injury and fear and interfering with his ability to exercise
3  his First Amendment rights. A disabled veteran, Donny-Clark was not charged with a
4  crime or resisting a lawful order.

5      12.    At the May Day demonstration on May 1, 2015, Donny-Clark was a
6  medic. It was easy to tell Donny-Clark was a medic because he wore a backpack that
7  had the word medic written on it and a red cross made of red duct tape. The word
8  medic was also written on his arm. Donny-Clark is certified as a Remote EMT and
9  Medical Person in Charge. He was carrying medical gear such as respirators.

10      13.    On East Olive Way, Donny-Clark was walking away from the police.
11  Although he was walking away at normal walking speed and had his back to the
12  officers, officers threw a grenade at or dangerously near Donny-Clark. The grenade
13  exploded and shrapnel hit Donny-Clark's Achilles. Soon after, another grenade
14  exploded and the shrapnel hit the back of his thigh. A third grenade went off in front of
15  him, and shrapnel hit his shin. Either officers were targeting Donny-Clark or were
16  throwing grenades without any concern for whom they might injure.

17      14.    Donny-Clark was not arrested for his actions on May Day; peaceful
18  political protest is legal in Seattle.

19      15.    Since Donny-Clark was not engaged in illegal actions, no use of force was
20  justified.

21      16.    Since Donny-Clark was acting as a support to citizens and as a peaceful
22  medic, no use of force was justified.

23      17.    Since Donny-Clark was not disobeying any lawful police order, no use of
24  fore was justified.

25
26

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
TELEPHONE: (206) 769-1772

18. Donny-Clark acts as a medic at protests to encourage and support speech protected by the First Amendment. Donny-Clark exercises his First Amendment rights by acting in this role, which is central to his engagement as a citizen.

19. This action seeks compensation for physical injuries, pain and suffering, as well as the harm of suppressing Jurkowski and Donny-Clark's right to political action and political speech.

20. This action also seeks an injunction requiring the Seattle Police Department to plan for protests and train officers in a way that minimizes violence against those engaging in political speech, and seeks the removal of incendiary devices from the standard weapons the Seattle police use to handle nonviolent crowds.

21. Finally, this action seeks punitive damages against the individual officers so that they will never again use violence against peaceful protesters.

## JURISDICTION AND VENUE

22. This Court has original jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction.

23. Venue is appropriate under 28 U.S.C. § 1391(b), because Defendants reside in this District and because all of the events and omissions giving rise to the claims occurred in this District. The Seattle Division is the proper forum because the events took place in King County, Washington.

## PARTIES

24. Plaintiff Jill "Frankie" Jurkowski is a resident of Seattle, King County, Washington.

25. Plaintiff Aaron Donny-Clark is a resident of Seattle, King County, Washington.

COMPLAINT – Page 5

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
TELEPHONE: (206) 769-1772

1    26.    Defendant City of Seattle is a city under Washington law.

2    27.    Assistant Police Chief Steve Wilske is a Seattle police officer and the
3  officer in charge of planning the police actions on the May Day. Wilske commanded,
4  authorized, encouraged, tolerated, and/or ratified the use of excessive force and
5  suppression of speech by officers. He is sued personally and in his official capacity.

6    28.    Captain Chris Fowler was the commander on the ground on May Day and
7  commanded, authorized, encouraged, tolerated, and/or ratified the use of excessive
8  force and suppression of speech by officers. He is sued personally and in his official
9  capacity.

10   29.    Defendant John Doe 1 is a Seattle Police Officer who was on duty at the
11 May Day protest on the evening of May 1, 2015. John Doe 1 threw a grenade that
12 injured Jurkowski, inflicted pain, and prevented Jurkowski from engaging in First
13 Amendment Activity. He is sued personally.

14   30.    Defendant Jane Doe 1 is a Seattle Police Officer who was on duty at the
15 May Day protest on the evening of May 1, 2015. Jane Doe 1 shot Jurkowski, injuring
16 Jurkowski, inflicting pain, and preventing Jurkowski from engaging in First
17 Amendment Activity. She is sued personally.

18   31.    Defendant John Doe 2 is a Seattle Police Officer who was on duty at the
19 May Day protest on the evening of May 1, 2015. John Doe 2 threw a grenade that
20 injured Donny-Clark, inflicted pain, and discouraged him from engaging in First
21 Amendment Activity. He is sued personally.

22   32.    Defendant Jane Doe 2 is a Seattle Police Officer who was on duty at the
23 May Day protest on the evening of May 1, 2015. Jane Doe 2 threw a grenade at Donny-
24 Clark, injuring Donny-Clark, inflicting pain, and discouraging him from engaging in
25 First Amendment Activity. She is sued personally.

COMPLAINT – Page 6

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
TELEPHONE: (206) 769-1772

# FACTS

33. In 1886, anarchists, socialists, exploited workers and other disadvantaged people held a series of protests in Chicago, focusing on the need for an eight hour working day. On May 4, 1886, a peaceful protest became a riot, with uncounted protesters dying, as well as eight police officers. The police claimed the riot was started by protesters, but the person who started the riot was likely an undercover police officer.

34. Whatever caused the riots in 1886, May Day is an international day of political protest and celebration serving as a regular reminder of the struggle for the rights of workers and others.

35. For over one hundred years, Seattleites have protested on May Day. Like the Chicago police almost 130 years ago, Seattle's Police Department plans carefully for these protests. Nothing about what the police do on May Day is random.

36. Police use undercover agents, electronic surveillance and other methods to gather intelligence about the protesters, their goals, and their messages.

37. Police action on May Day is part of a well-rehearsed strategy.

38. The police use this strategy to contain, defuse, discourage, and harm protesters and make it more difficult for individuals and groups to speak.

39. Defendants favor some speech.

40. Seattle's mayor stated his support for some of the marches on May Day and his opposition to other marches, including the one at which Jurkowski and Donny-Clark were injured.[1]

41. In this Complaint, May Day and protest refer to the 2015 anti-capitalist march on May 1, 2015.

---

[1] http://www.seattle.gov/news/detail.asp?ID=15014;
http://www.thestranger.com/blogs/slog/2015/05/08/22181978/this-week-on-the-blabbermouth-podcast-mayor-ed-murray-on-may-day-shell-and-another-seattle-times-scolding

COMPLAINT – Page 7

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
TELEPHONE: (206) 769-1772

42. For the evening anti-capitalist march, the police were dressed in black uniforms designed not just to protect them, but also to frighten citizens and make the officers anonymous. For other protests, the police dressed in regular uniforms.

43. For the anti-capitalist march, the Seattle Police Department armed themselves with grenades, guns, sticks, 40 mm launchers, pepper spray and other weapons. The police were trained to use, and determined to use, these weapons regardless of the threat posed by protesters. The weapons and tactics were designed to injure and terrorize citizens and dissuade them from engaging in political speech.

44. The May Day demonstrations failed to live up to the City's fears of a second "World Trade Organization" riot, but police violence created mayhem, injuries, and suppressed speech. A City Council member blamed the police for "the first act of violence, the first act of unfairness . . ."[2]

45. Jurkowski and Donny-Clark volunteer with the Puget Sound Medic Collective. The collective was founded during the West Coast Port Shutdown in 2011. It provides "inclusive healthcare support for direct action regarding social, economic, healthcare, and environmental injustices."

46. The Collective received requests for services for four separate events on May 1, 2015: El Committee; Black Lives Matter/Lumpen; anti-capitalist; and a protest at Westlake Park by black women. Jurkowski planned to spend the entire day supporting these marches.

47. The anti-capitalist march began around 6 pm.

48. The march began at Broadway and Pine Street and on the Seattle Central Community College campus.

---

[2] http://www.thestranger.com/blogs/slog/2015/05/07/22176478/city-council-members-criticize-tactics-used-by-seattle-police-on-may-day-police-chief-responds

COMPLAINT – Page 8

49. A bit after 7 pm, the march was returning to Seattle Central. Police began using pepper spray and blast balls.

50. No dispersal order was made.

51. Jurkowski then noticed that a fellow medic had been injured by a blast ball. Jurkowski treated the medic with an ice pack. The medic was upset and decided to leave the protest.

52. Jurkowski then encountered a person who had been pepper sprayed. She treated that person.

53. Jurkowski noticed that another person was injured and sought to assist the person. Officers prevented Jurkowski from tending to the injured person. In the past, officers have allowed access to an injured individual for treatment.

54. The marchers then went down Pine or Pike street, going west toward downtown. The police continually pushed the marchers north, until the march ended up at the intersection of Boylston and Olive Way, near the bridge over I-5.

55. At this point, the use of pepper spray and blast balls intensified.

56. As before, there was no dispersal order.

57. Police officers did not appear to be distinguishing between those engaging in First Amendment activity and those who might have been engaged in illegal activity.

58. Sometimes the police pepper-sprayed people if they thought they were moving too slowly or were disrespectful. Sometimes the police did not use pepper spray, although individuals were moving even more slowly or were disrespectful.

59. As the line of officers moved protesters back, Jurkowski moved with them. She was some distance from the line of officers, with several people between her and officers.

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
TELEPHONE: (206) 769-1772

60. Jurkowski heard the calls for a medic near the Montana bar at Olive Street and Howell.

61. Jurkowski crossed the street to tend the injured person. Just before getting to the sidewalk where the injured person lay, Jurkowski was hit by a blast ball grenade. The grenade exploded against Jurkowski's body.

62. Still in shock from the grenade blast, Jurkowski was shot by a blue tipped impact sponge. She fell on the curb.

63. Jurkowski's leg felt cold like ice and was numb. She feared that the leg had been blown off.

64. Although a trained medic, at first she could not bring herself to look at the injury. When she looked down, she saw it was wet. Her fears were soon confirmed: the wetness was blood.

65. There was pepper spray everywhere and continuing explosions from the police grenades. Jurkowski sought refuge in the bar, which allowed her in because of her extensive injury.

66. Jurkowski is proud that she maintains her medic post throughout protests, regardless of weather, chaos, and possible danger. She wished to continue her work supporting people's exercise of their right to protest, free speech and celebration.

67. The injuries the police assault caused were so severe that Jurkowski could not continue her duties on May Day; she was unable to exercise her right to speak and peaceably assemble.

68. In short, Defendants' actions chilled and deterred Jurkowski's exercise of her First Amendment freedoms.

69. Jurkowski made it to a friend's house nearby. At that person's house, she removed some of the blood and pieces of her clothing that had been blown into the wound by the blast. Her wound was bandaged and disinfected.

COMPLAINT – Page 10

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
TELEPHONE: (206) 769-1772

1   70.   About 90 minutes later, friends picked her up and took her home.

2   71.   The next day she felt even worse.

3   72.   Despite her efforts, the wound got infected.

4   73.   In the emergency room, a doctor told her that she should not go the May Day protests. The police narrative about people who protest on May Day had convinced this person that May Day protests are illegitimate, despite the more than century of history of these protests and the fact that most people work eight hours a day because of the movement that was inspired by May Day protests at Chicago's Haymarket.

10   74.   After she started antibiotics, the pain started decreasing.

11   75.   Until about May 20th, Jurkowski had open wounds.

12   76.   Now that more than two months have passed, it is clear that the wound and the burns will leave a scar.

14   77.   Donny-Clark volunteers with the Puget Sound Medic Collective.

15   78.   Donny-Clark arrived at the May Day march to support protestors and to engage in First Amendment activity.

17   79.   At Olive Way and Boylston, a the line of officers moved protesters back and Donny-Clark moved with them. He was some distance from the line of officers, with several people between him and officers.

20   80.   There was no dispersal order and the police failed to instruct people on which direction they should move and what a safe route would be.

22   81.   Nonetheless, the officers shouted "move," which could only have meant to move away from them. Video plainly shows Donny-Clark peacefully walking away from the police when he was first hit by a grenade.[3]

---

[3] https://www.youtube.com/watch?v=WT5sj9ipvis&feature=youtu.be&t=3m20s at 3:26-3:29.

COMPLAINT – Page 11

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
TELEPHONE: (206) 769-1772

1    82.    He was in shock. He wondered why was he was being hit with a grenade
2 when he was doing nothing illegal.
3    83.    Then he felt another explosion and something hitting his thigh. Then
4 another explosion, and something hit his shin. Again, he wondered how he could be
5 targeted, given his markings and that he was not disobeying any police order.
6    84.    The injuries Donny-Clark suffered caused pain and took at least two
7 weeks to heal.
8    85.    Despite a consent decree with the Department of Justice seeking to
9 change Seattle's practice of routinely using excessive force, the defendants planned,
10 authorized, implemented, and/or ratified policies and practices that used excessive
11 force against peaceful demonstrators.
12    86.    Although for years May Day events have featured a large number of
13 peaceful protestors and a small number of property damage incidents, the defendants
14 planned, authorized, implemented, and/or ratified policies subjecting to violence
15 everyone protesting and exercising their constitutional rights.
16    87.    Blast balls and blue tipped sponges are designed to frighten individuals
17 into submitting to the orders of state agents. Use of such weapons against non-violent
18 protestors is contrary to the constitution.
19    88.    According to the Seattle Police Department, what people fear on the most
20 basic level is thunder and lightning. The Seattle Police Department describes the blast
21 balls as "thunder and lightning in the palm of your hand." It is a weapon designed to
22 terrorize individuals into compliance.[4]
23    89.    In the same video, the Seattle Police Department admits blast balls are
24 not to be thrown into crowds, but to the side of a crowd to move people in a direction,
25 to "herd them into escape routes." Defendants, however, implemented a plan on May

---

[4] http://blutube.policeone.com/videos/935703812001-blast-ball-lesslethal-crowd-control/

COMPLAINT – Page 12

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
TELEPHONE: (206) 769-1772

1  Day to throw blast balls indiscriminately into crowds without making a prior dispersal
2  order. Defendants also implemented a plan to target blast balls as weapons against
3  specific individuals.

4      90. Defendants' actions on May Day were ratified by Chief Kathleen O'Toole.
5  O'Toole professed to be shocked—not by police violence against peaceful protesters,
6  but by criticism of that police violence by City Council members, the press, and
7  citizens.[5]

8      91. Defendants' actions were also ratified by Wilske and Fowler, on social
9  media, in the press, and before the City Council.

10      92. Defendants' actions are consistent with their actions against other non-
11  violent protestors. On Martin Luther King Day in 2015, Seattle police officers pepper-
12  sprayed individuals who were following police orders. One individual was talking on
13  his cell phone and walking toward a sidewalk as an officer pepper sprayed him.[6] The
14  Seattle Police Department's decision to support officers who engaged in this behavior
15  shows deliberate indifference to the rights of peaceful protestors.

16      93. On May 1, 2013, Jurkowski also sustained injuries while providing
17  medical care to demonstrators. She was following police orders and was injured when
18  an officer used his bicycle as a weapon against her. Other medics were also injured at
19  this event, some more severely than Jurkowski.

20      94. Defendants will try to justify their actions. They will point to property
21  damage. Defendants will claim that three officers were injured in the "riots."[7]

---

[5] http://spdblotter.seattle.gov/2015/05/06/chief-otoole-shocked-and-disappointed-by-councilmember-harrells-statements-all-force-remains-under-review/. *See also* http://www.king5.com/story/news/local/seattle/2015/05/01/may-day-friday-coverage/26724049/ (O'Toole stating that officers were "very professional" in how they handled May Day.

[6] http://slog.thestranger.com/slog/archives/2015/01/28/watch-seattle-police-pepper-spray-teacher-jesse-hagopian-on-mlk-day

[7] http://www.komonews.com/news/local/Police-shadow-black-clad-protestors-as-they-march-through-Seattle-streets-302270231.html

COMPLAINT – Page 13

Discovery will show that at least two of these injuries were likely caused by the police themselves, through accidents or friendly fire.

95. Discovery will also show, as Council member Harrell declared, that the police violence came before the "riot" began and the police injuries occurred only after the police themselves began using their weapons.

96. Targeting peaceful protesters with grenades and other weapons is not an acceptable response to the alleged illegal or violent acts of a small number of people.

## CAUSES OF ACTION

### COUNT 1: 42 U.S.C. § 1983

*(Against all Defendants for Violation of Jurkowski's First Amendment rights)*

97. Defendants' actions in targeting, harming, and intimidating Jurkowski infringe on her right to speak by discouraging her from participating in protests, and by forcing her to stop participating in the 2015 May Day protest. These actions were taken under color of law and without lawful justification.

98. Jurkowski was engaged in activity protected by the First Amendment.

99. Jurkowski was a non-violent observer and participant in a political protest. Jurkowski was not resisting a lawful order.

100. No use of force against Jurkowski was justified.

101. The police targeted Jurkowski while she was engaged in protected activity and because she was engaged in protected activity. Police targeted her because she was exercising her rights and because of the content of her speech. By targeting her with grenades and shooting her, the defendants made it impossible for Jurkowski to continue her First Amendment activities. Jurkowski, like any person would be, was dissuaded and discouraged from continuing her First Amendment activities. Indeed, because of her injuries, she was unable to continue her First Amendment activities.

COMPLAINT – Page 14

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
TELEPHONE: (206) 769-1772

102. Jurkowski's injuries should be compensated in an amount determined by a jury. Punitive damages should be awarded against the individual defendants.

### COUNT 2: 42 U.S.C. § 1983

*(Against all Defendants for Violation of Jurkowski's Fourth and Fourteenth Amendment rights)*

103. Jurkowski was a non-violent observer and participant in a political protest. Jurkowski was not resisting a lawful order.

104. No use of force against Jurkowski was justified.

105. Defendants' actions in hitting Jurkowski with a grenade and then shooting her violated her right to be free of excessive force, unreasonable searches and seizures, and her due process right to be free of punishment without process. These actions were taken under color of law and without lawful justification.

106. Jurkowski's injuries should be compensated in an amount determined by a jury. Punitive damages should be awarded against the individual defendants.

### COUNT 3: 42 U.S.C. § 1983

*(Against all Defendants for Violation of Donny-Clark's First Amendment rights)*

107. Defendants' actions in targeting, harming, and intimidating Donny-Clark infringe on his right to speak by discouraging him from participating in protests. These actions were taken under color of law and without lawful justification.

108. Donny-Clark was engaged in activity protected by the First Amendment.

109. Donny-Clark was a non-violent observer and participant in a political protest. Donny-Clark was not resisting a lawful order.

110. No use of force against Donny-Clark was justified.

COMPLAINT – Page 15

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
TELEPHONE: (206) 769-1772

111. The police targeted Donny-Clark while he was engaged in protected activity and because he was engaged in protected activity. Police targeted him because he was exercising his rights and because of the content of his speech. By targeting him with grenades, the defendants discouraged Donny-Clark from continuing his First Amendment activities. Donny-Clark, like any person would be, was dissuaded and discouraged from continuing his First Amendment activities when he was targeted with grenades. He left the May Day protest earlier than he otherwise would have.

112. Donny-Clark's injuries should be compensated in an amount determined by a jury. Punitive damages should be awarded against the individual defendants.

## COUNT 4: 42 U.S.C. § 1983

*(Against all Defendants for Violation of Donny-Clark's Fourth and Fourteenth Amendment rights)*

113. Donny-Clark was a non-violent observer and participant in a political protest. Donny-Clark was not resisting a lawful order.

114. No use of force against Donny-Clark was justified.

115. Defendants' actions in hitting Donny-Clark with grenades violated his right to be free of excessive force, unreasonable searches and seizures, and his due process right to be free of punishment without process. These actions were taken under color of law and without lawful justification.

116. Donny-Clark's injuries should be compensated in an amount determined by a jury. Punitive damages should be awarded against the individual defendants.

/
/
/

LAW OFFICES OF
**Harry Williams L.L.C.**
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
TELEPHONE: (206) 769-1772

## COUNT 5: 42 U.S.C. § 1983

*(Against the City of Seattle for a pattern and practice of excessive force, violating the Fourteenth Amendment, on behalf of all plaintiffs)*

117. By failing to properly train, supervise, or discipline officers, the City of Seattle has a pattern and practice, or policy or custom, of using excessive force against political protesters.

118. By commanding, authorizing, encouraging, tolerating, and/or ratifying the use of excessive force by officers on May Day, the City of Seattle engaged in a pattern and practice of excessive force against non-violent protestors.

119. As a result, Jurkowski and Donny-Clark have been injured.

120. Jurkowski and Donny-Clark's injuries should be compensated in an amount determined by a jury.

## DEMAND FOR RELIEF

Plaintiffs demand judgment against Defendant as follows:

A. Damages in an amount to be determined by jury;

B. Punitive damages in an amount to be determined by a jury;

C. A permanent injunction prohibiting Defendants from using excessive force against peaceful protesters;

D. Costs of suit, including reasonable attorneys' fees, costs, and expenses as provided by law; and

COMPLAINT – Page 17

LAW OFFICES OF
**HARRY WILLIAMS L.L.C.**
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
TELEPHONE: (206) 769-1772

E. Such other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

DATED July 21, 2015.

LAW OFFICE OF HARRY WILLIAMS LLC.

By  s/ Harry Williams IV
   Harry Williams IV, WSBA #41020
   harry@harrywilliamslaw.com.
   707 East Harrison
   Seattle, WA 98102
   Telephone:  206.769.1772

***Attorney for Plaintiff***

COMPLAINT – Page 18

LAW OFFICES OF
**HARRY WILLIAMS L.L.C.**
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
TELEPHONE: (206) 769-1772