The Honorable Thomas H. Zilly

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

J. FRANKIE JURKOWSKI, AARON
DONNY-CLARK,

                      Plaintiffs,

     v.

CITY OF SEATTLE, Assistant Chief Steve
Wilske, Captain Chris Fowler, Trent
Bergmann, Thomas Yoon, Mark Grinstead,
Kirk Waldorf, Brian Rees, Robert Brown,
and Marc Garth Green,

                      Defendants.

No. 2:15-cv-1155

**FIRST AMENDED COMPLAINT**

**JURY DEMAND**

20

**NATURE OF ACTION**

21
22
23
24
25
26

    1.     At the May Day demonstration on May 1, 2015, Plaintiff Frankie

Jurkowski was working as a medic. It was easy to tell Jurkowski was a medic because

she wore florescent pink tape in the shape of a cross on her back and arms. She also

had a red cross Puget Sound Medic Collective emblem patch on her bag. She has

training as a medic and her actions at the protest made it plain she was a medic. She

FIRST AMENDED COMPLAINT – Page 1

LAW OFFICES OF
**HARRY WILLIAMS L.L.C.**
707 EAST HARRISON STREET
SEATTLE, WASHINGTON  98102
TELEPHONE: (206) 769-1772

1  was doing what a medic does: tending to injured people. Jurkowski treated several

2  injuries during the event.

3      2.    Just after 8 pm, over about four minutes, Seattle police officers

4  Bergmann, Yoon, Rees, Brown, and Grinstead deployed a dozen grenades at or near

5  Jurkowski. The purpose of deploying the grenades was to terrify peaceful participants

6  in the demonstration and cause them to cease their First Amendment activity. The

7  grenades were deployed because the officers disapproved of medics' participation at

8  demonstrations, and because officers disapproved of the demonstrators' message as

9  the officers perceived it.

10      3.    The grenades caused Jurkowski to suffer from anxiety and fear. When

11  Jurkowski was moving to assist an injured individual near the Montana bar, a police

12  officer threw a ball blast grenade at her. This was the eleventh grenade that had been

13  thrown at or near Jurkowski. The officer threw this grenade while Jurkowski was some

14  distance from any officers. He threw this grenade without warning. The grenade hit

15  Jurkowski and exploded at the same time. The shrapnel from the grenade burned

16  through Jurkowski's pant leg, ripped through Jurkowski's leg, and caused large painful

17  hematoma burns. A picture says a thousand words: below is what the grenade did to

18  Jurkowski's leg.

19

20

21

22

23

24

25

26

FIRST AMENDED COMPLAINT – Page 2



4.      The officer who threw the grenade at Jurkowski had received extensive training in use of the weapon. The officer was trained to use force regardless of whether anyone was in danger. The officer was trained to use force regardless of whether anyone was disregarding a lawful order. And the officer deployed the grenade although neither he or the public were in any danger.

5.      At almost the same time, Jurkowski was shot with a nonlethal weapon by another police officer, defendant Waldorf. Waldorf aimed a pepper ball gun at Jurkowski and shot her, leaving a round contusion on her leg that, because of the pepper spray inside the ball, felt like a burn. While the weapon was designed to inflict pain rather than kill Jurkowski, she was shot by an officer. To shoot Jurkowski, Waldorf had to aim the weapon at her and make a decision to fire the weapon. Although she was non-violent, not interfering with any police activity, not ignoring any police order, and acting as a medic, Waldorf decided to inflict pain on Jurkowski. Waldorf received extensive training with the weapon. His shooting must have been deliberate.

FIRST AMENDED COMPLAINT – Page 3

LAW OFFICES OF
**HARRY WILLIAMS L.L.C.**
707 EAST HARRISON STREET
SEATTLE, WASHINGTON  98102
TELEPHONE: (206) 769-1772

6.      Jurkowski was not arrested for her actions on May Day; peaceful political protest is legal in Seattle.

7.      Since Jurkowski was not engaged in illegal actions, no use of force was justified, much less the degree of force used.

8.      Since Jurkowski was acting as a support to citizens and as a nonviolent medic, no use of force was justified, much less the degree of force used.

9.      Jurkowski acts as a medic at protests to encourage and support speech protected by the First Amendment. Jurkowski exercises her own First Amendment rights by acting in this role, which is central to her engagement as a citizen.

10.     Jurkowski's plan on May Day was to support all the activities where people were exercising their right to speak until the protest ended or had dispersed.

11.     Jurkowski's injuries forced her to leave the protest. She was unable to exercise her rights because of police violence against her.

12.     Plaintiff Aaron Donny-Clark is a veteran of the wars in Iraq and Afghanistan. On May Day 2015, he sought to exercise the constitutional rights he protected while in the military. In response, the Seattle Police Department tossed grenades at him, causing him injury, anxiety and fear, and interfering with his ability to exercise his First Amendment rights. A disabled veteran, Donny-Clark was not charged with a crime or resisting a lawful order.

13.     At the May Day demonstration on May 1, 2015, Donny-Clark was a medic. It was easy to tell Donny-Clark was a medic because he wore a backpack that had the word medic written on it and a red cross made of red duct tape. The word medic was also written on his arm. Donny-Clark is certified as a Remote EMT and Medical Person in Charge. He was carrying medical gear such as respirators.

FIRST AMENDED COMPLAINT – Page 4

14.     Just after 8 pm, over about four minutes, Seattle police officers Bergmann, Yoon, Rees, Brown, and Grinstead deployed a dozen grenades at or near Jurkowski.

15.     As Donny-Clark walked past the intersection at East Olive Way and Bellevue, and although Donny-Clark and the group around him was moving away from police, Defendant Bergmann deployed a grenade. Donny-Clark continued to move, but officers Rees, Yoon, Bergmann, Grinstead and/or Brown deployed five more grenades at or around Donny-Clark. These weapons are designed to cause panic and anxiety, and they caused Donny-Clark to feel panic and anxiety.

16.     Although he was walking away at normal walking speed and had his back to the officers, officer Rees, Yoon, Bergmann, Grinstead and/or Brown threw a grenade at or dangerously near Donny-Clark while he was walking past the Montana bar. The grenade exploded and shrapnel hit Donny-Clark's Achilles. Five second later, another grenade exploded and the shrapnel hit the back of his thigh. Either officers were targeting Donny-Clark or were throwing grenades without any concern for whom they might injure.

17.     Donny-Clark was not arrested for his actions on May Day; peaceful political protest is legal in Seattle.

18.     Since Donny-Clark was not engaged in illegal actions, no use of force was justified.

19.     Since Donny-Clark was acting as a support to citizens and as a peaceful medic, no use of force was justified.

20.     Since Donny-Clark was not disobeying any lawful police order, no use of fore was justified.

FIRST AMENDED COMPLAINT – Page 5

21.     Donny-Clark acts as a medic at protests to encourage and support speech protected by the First Amendment. Donny-Clark exercises his First Amendment rights by acting in this role, which is central to his engagement as a citizen.

22.     Each of the individual defendants had an opportunity to stop the use of excessive force by other officers, but failed to do so. Each individual defendant was an integral part of a concerted use of excessive force on plaintiffs. Wilske, Fowler, and Garth Green ordered, approved, and/or ratified the use of excessive force by other officers.

23.     This action seeks compensation for defendants' causing plaintiffs to suffer anxiety and fear, physical injuries, pain and suffering, as well as the harm of suppressing Jurkowski and Donny-Clark's right to political action and political speech.

24.     This action also seeks an injunction requiring the Seattle Police Department to plan for protests and train officers in a way that minimizes violence against those engaging in political speech, and seeks the removal of incendiary devices from the standard weapons the Seattle police use to handle nonviolent crowds.

25.     Finally, this action seeks punitive damages against the individual officers so that they will never again use violence against peaceful protesters.

## JURISDICTION AND VENUE

26.     This Court has original jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction).

27.     Venue is appropriate under 28 U.S.C. § 1391(b), because Defendants reside in this District and because all of the events and omissions giving rise to the claims occurred in this District. The Seattle Division is the proper forum because the events took place in King County, Washington.

FIRST AMENDED COMPLAINT – Page 6

**PARTIES**

1

2      28.     Plaintiff Jill "Frankie" Jurkowski is a resident of Seattle, King County,

3      Washington.

4      29.     Plaintiff Aaron Donny-Clark is a resident of Seattle, King County,

5      Washington.

6      30.     Defendant **City of Seattle** is a city under Washington law.

7      31.     Assistant Police Chief Steve **Wilske** is a Seattle police officer and the

8      officer in charge of planning the police actions on the May Day. Wilske commanded,

9      authorized, encouraged, tolerated, and/or ratified the use of excessive force and

10     suppression of speech by officers. He failed to intervene when excessive force was used

11     and was an integral part of the use of excessive force. He is sued personally and in his

12     official capacity.

13     32.     Captain Chris **Fowler** was the commander on the ground on May Day

14     and commanded, authorized, encouraged, tolerated, and/or ratified the use of

15     excessive force and suppression of speech by officers. He failed to intervene when

16     excessive force was used and was an integral part of the use of excessive force. He is

17     sued personally and in his official capacity.

18     33.     Defendant Trent **Bergmann** is a Seattle Police Officer who was on duty

19     at the May Day protest on the evening of May 1, 2015. Bergmann threw grenades at or

20     near Jurkowski and Donny-Clark and those grenades caused fear and anxiety and

21     injured Jurkowski and/or Donny-Clark, inflicted pain, and prevented Jurkowski

22     and/or Donny-Clark from engaging in First Amendment Activity. Seattle's internal

23     Force Investigation Report names him as an officer deploying grenades in the area

24     where plaintiffs were subjected to excessive force. He failed to intervene when

25     excessive force was used and was an integral part of the use of excessive force. He is

26     sued personally.

FIRST AMENDED COMPLAINT – Page 7

1        34.     Defendant Kirk **Waldorf** is a Seattle Police Officer who was on duty at

2   the May Day protest on the evening of May 1, 2015. Waldorf shot Jurkowski, injuring

3   Jurkowski, inflicting pain, and preventing Jurkowski from engaging in First

4   Amendment Activity. He failed to intervene when excessive force was used and was an

5   integral part of the use of excessive force. Seattle's internal Force Investigation Report

6   names him as an officer shooting a pepper ball at Jurkowski subjected HER to

7   excessive force. He is sued personally.

8        35.     Defendant Thomas **Yoon** is a Seattle Police Officer who was on duty at

9   the May Day protest on the evening of May 1, 2015. Yoon threw grenades at or near

10  Jurkowski and Donny-Clark and that caused fear and anxiety and injured Jurkowski

11  and/or Donny-Clark, inflicted pain, and discouraged Jurkowski and/or Donny-Clark

12  from engaging in First Amendment Activity. Seattle's internal Force Investigation

13  Report names him as an officer deploying grenades in the area where plaintiffs were

14  subjected to excessive force. He failed to intervene when excessive force was used and

15  was an integral part of the use of excessive force. He is sued personally.

16       36.     Defendant Mark **Grinstead** is a Seattle Police Officer who was on duty

17  at the May Day protest on the evening of May 1, 2015. Grinstead threw grenades at or

18  near Jurkowski and/or Donny-Clark, injuring Jurkowski and/or Donny-Clark, causing

19  fear and anxiety and inflicting pain, and discouraging plaintiffs from engaging in First

20  Amendment Activity. Seattle's internal Force Investigation Report names him as an

21  officer deploying grenades in the area where plaintiffs were subjected to excessive

22  force. He failed to intervene when excessive force was used and was an integral part of

23  the use of excessive force. He is sued personally.

24       37.     Defendant Robert **Brown** is a Seattle Police Officer who was on duty at

25  the May Day protest on the evening of May 1, 2015. Brown threw grenades at or near

26  Jurkowski and/or Donny-Clark, injuring Jurkowski and/or Donny-Clark, causing fear

FIRST AMENDED COMPLAINT – Page 8

and anxiety and inflicting pain, and discouraging plaintiffs from engaging in First Amendment activity. Seattle's internal Force Investigation Report names him as an officer deploying grenades in the area where plaintiffs were subjected to excessive force. He failed to intervene when excessive force was used and was an integral part of the use of excessive force. He is sued personally.

38.    Defendant Brian **Rees** is a Seattle Police Officer who was on duty at the May Day protest on the evening of May 1, 2015. Brown threw grenades at or near Jurkowski and/or Donny-Clark, injuring Jurkowski and/or Donny-Clark, causing fear and anxiety and inflicting pain, and discouraging plaintiffs from engaging in First Amendment activity. Seattle's internal Force Investigation Report names him as an officer deploying grenades in the area where plaintiffs were subjected to excessive force. He failed to intervene when excessive force was used and was an integral part of the use of excessive force. He is sued personally.

39.    Marc **Garth Green** was a Seattle police officer at the May Day demonstrations and commanded, authorized, encouraged, tolerated, and/or ratified the use of excessive force and suppression of speech by officers. He failed to intervene when excessive force was used and was an integral part of the use of excessive force. He ordered and authorized the use of force, and supervised the imposition of excessive force. He is sued personally and in his official capacity.

## FACTS

40.    In 1886, anarchists, socialists, exploited workers and other disadvantaged people held a series of protests in Chicago, focusing on the need for an eight hour working day. On May 4, 1886, a peaceful protest became a riot, with uncounted protesters dying, as well as eight police officers. The police claimed the riot

FIRST AMENDED COMPLAINT – Page 9

1  was started by protesters, but the person who started the riot was likely an undercover
2  police officer.

3  41.   Whatever caused the riots in 1886, May Day is an international day of
4  political protest and celebration serving as a regular reminder of the struggle for the
5  rights of workers and others.

6  42.   For over one hundred years, Seattleites have protested on May Day. Like
7  the Chicago police almost 130 years ago, Seattle's Police Department plans carefully for
8  these protests. Nothing about what the police do on May Day is random.

9  43.   Police use undercover agents, electronic surveillance and other methods
10  to gather intelligence about the protesters, their goals, and their messages.

11  44.   Police action on May Day is part of a well-rehearsed strategy.

12  45.   The police use this strategy to contain, defuse, discourage, and harm
13  protesters and make it more difficult for individuals and groups to speak.

14  46.   Defendants favor some speech.

15  47.   Seattle's mayor stated his support for some of the marches on May Day
16  and his opposition to other marches, including the one at which Jurkowski and Donny-
17  Clark were injured.[1]

18  48.   In this Complaint, May Day and protest refer to the 2015 anti-capitalist
19  march on May 1, 2015.

20  49.   For the anti-capitalist march, the police were dressed in black uniforms
21  designed not just to protect them, but also to frighten citizens and make the officers
22  anonymous. For other protests, the police dressed in regular uniforms.

23  50.   For the anti-capitalist march, the Seattle Police Department armed
24  themselves with grenades, guns, sticks, 40 mm launchers, pepper spray and other

25
26  [1] http://www.seattle.gov/news/detail.asp?ID=15014;
   http://www.thestranger.com/blogs/slog/2015/05/08/22181978/this-week-on-the-blabbermouth-podcast-mayor-
   ed-murray-on-may-day-shell-and-another-seattle-times-scolding

FIRST AMENDED COMPLAINT – Page 10

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON  98102
TELEPHONE: (206) 769-1772

1  weapons. The police were trained to use, and determined to use, these weapons

2  regardless of the threat posed by protesters. The weapons and tactics were designed to

3  injure and terrorize citizens and dissuade them from engaging in political speech.

4      51.      The May Day demonstrations failed to live up to the City's fears of a

5  second "World Trade Organization" riot, but police violence created mayhem, injuries,

6  and suppressed speech. A City Council member blamed the police for "the first act of

7  violence, the first act of unfairness . . ."[2]

8      52.      Jurkowski and Donny-Clark volunteer with the Puget Sound Medic

9  Collective. The collective was founded during the West Coast Port Shutdown in 2011. It

10 provides "inclusive healthcare support for direct action regarding social, economic,

11 healthcare, and environmental injustices."

12     53.      The Collective received requests for services for four separate events on

13 May 1, 2015: El Comite; Black Lives Matter/Lumpen; anti-capitalist; and a protest at

14 Westlake Park by black women. Jurkowski planned to spend the entire day supporting

15 these marches.

16     54.      The anti-capitalist march began around 6 pm.

17     55.      The march began at Broadway and Pine Street and on the Seattle Central

18 Community College campus.

19     56.      A bit after 7 pm, the march was returning to Seattle Central. Police began

20 using pepper spray and blast balls.

21     57.      No dispersal order was made.

22     58.      Jurkowski then noticed that a fellow medic had been injured by a blast

23 ball. Jurkowski treated the medic with an ice pack. The medic was upset and decided to

24 leave the protest.

25

26 [2] http://www.thestranger.com/blogs/slog/2015/05/07/22176478/city-council-members-criticize-tactics-used-by-
   seattle-police-on-may-day-police-chief-responds

FIRST AMENDED COMPLAINT – Page 11

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON  98102
TELEPHONE: (206) 769-1772

59.   Jurkowski then encountered a person who had been pepper sprayed. She treated that person.

60.   Jurkowski noticed that another person was injured and sought to assist the person. Officers prevented Jurkowski from tending to the injured person. In the past, officers have allowed access to an injured individual for treatment.

61.   The marchers then went down Pine or Pike street, going west toward downtown. The police continually pushed the marchers north, until the march ended up at the intersection of Boylston and Olive Way, near the bridge over I-5.

62.   At this point, the use of pepper spray and blast balls intensified.

63.   As before, there was no dispersal order.

64.   Police officers did not distinguish between those engaging in First Amendment activity and those who might have been engaged in illegal activity.

65.   Sometimes the police pepper-sprayed people if they thought they were moving too slowly or were disrespectful.  Sometimes the police did not use pepper spray, although individuals were moving even more slowly or were disrespectful.

66.   As the line of officers moved protesters back, Jurkowski moved with them. She was some distance from the line of officers, with several people between her and officers.

67.   The defendants' continuous use of force caused her anxiety and fear.

68.   Jurkowski heard calls for a medic near the Montana bar at Olive Street and Howell.

69.   Jurkowski crossed the street to tend the injured person. Just before getting to the sidewalk where the injured person lay, Jurkowski was hit by a blast ball grenade. The grenade exploded against Jurkowski's body.

70.   Still in shock from the grenade blast, Jurkowski was shot by a blue tipped impact sponge. She fell on the curb.

FIRST AMENDED COMPLAINT – Page 12

LAW OFFICES OF
**HARRY WILLIAMS L.L.C.**
707 EAST HARRISON STREET
SEATTLE, WASHINGTON  98102
TELEPHONE: (206) 769-1772

71.     Jurkowski's leg felt cold like ice and was numb.  She feared that the leg had been blown off.

72.     Although a trained medic, at first she could not bring herself to look at the injury. When she looked down, she saw it was wet. Her fears were soon confirmed: the wetness was blood.

73.     There was pepper spray everywhere and continuing explosions from the police grenades. Jurkowski sought refuge in the bar, which allowed her in because of her extensive injury.

74.     Jurkowski is proud that she maintains her medic post throughout protests, regardless of weather, chaos, and possible danger. She wished to continue her work supporting people's exercise of their right to protest, free speech and celebration.

75.     The injuries the police assault caused were so severe that Jurkowski could not continue her duties on May Day; she was unable to exercise her right to speak and peaceably assemble.

76.     In short, Defendants' actions chilled and deterred Jurkowski's exercise of her First Amendment freedoms.

77.     Jurkowski made it to a friend's house nearby. At that person's house, she removed some of the blood and pieces of her clothing that had been blown into the wound by the blast. Her wound was bandaged and disinfected.

78.     About 90 minutes later, friends picked her up and took her home.

79.     The next day she felt even worse.

80.     Despite her efforts, the wound got infected.

81.     In the emergency room, a doctor told her that she should not go the May Day protests. The police narrative about people who protest on May Day had convinced this person that May Day protests are illegitimate, despite the more than a century of history of these protests and the fact that most people work eight hours a

FIRST AMENDED COMPLAINT – Page 13

LAW OFFICES OF
**HARRY WILLIAMS L.L.C.**
707 EAST HARRISON STREET
SEATTLE, WASHINGTON  98102
TELEPHONE: (206) 769-1772

1  day because of the movement that was inspired by May Day protests at Chicago's

2  Haymarket.

3       82.   After she started antibiotics, the pain started decreasing.

4       83.   Until about May 20th, Jurkowski had open wounds.

5       84.   Now that more than two months have passed, it is clear that the wound

6  and the burns will leave a scar.

7       85.   Donny-Clark volunteers with the Puget Sound Medic Collective.

8       86.   Donny-Clark arrived at the May Day march to support protestors and to

9  engage in First Amendment activity.

10      87.   At Olive Way and Boylston, a the line of officers moved protesters back

11  and Donny-Clark moved with them. He was some distance from the line of officers,

12  with several people between him and officers.

13      88.   The defendants' continuous use of force caused her anxiety and fear.

14      89.   There was no dispersal order and the police failed to instruct people on

15  which direction they should move and what a safe route would be.

16      90.   Nonetheless, the officers shouted "move," which could only have meant

17  to move away from them. Video plainly shows Donny-Clark peacefully walking away

18  from the police when he was first hit by a grenade.[3]

19      91.   He was in shock. He wondered why was he was being hit with a grenade

20  when he was doing nothing illegal.

21      92.   Then he felt another explosion and something hitting his thigh. Then

22  another explosion, and something hit his shin. Again, he wondered how he could be

23  targeted, given his markings and that he was not disobeying any police order.

24      93.   The injuries Donny-Clark suffered caused pain and took at least two

25  weeks to heal.

26

[3] https://www.youtube.com/watch?v=WT5sj9ipvis&feature=youtu.be&t=3m20s at 3:26-3:29.

FIRST AMENDED COMPLAINT – Page 14

LAW OFFICES OF
HARRY WILLIAMS L.L.C.
707 EAST HARRISON STREET
SEATTLE, WASHINGTON  98102
TELEPHONE: (206) 769-1772

94.     Despite a consent decree with the Department of Justice seeking to change Seattle's practice of routinely using excessive force, the defendants planned, authorized, implemented, and/or ratified policies and practices that used excessive force against peaceful demonstrators.

95.     Although for years May Day events have featured a large number of peaceful protestors and a small number of property damage incidents, the defendants planned, authorized, implemented, and/or ratified policies subjecting to violence everyone protesting and exercising their constitutional rights.

96.     Blast balls and pepper balls are designed to frighten individuals into submitting to the orders of state agents. Use of such weapons against non-violent protestors is contrary to the constitution.

97.     According to the Seattle Police Department, what people fear on the most basic level is thunder and lightning. The Seattle Police Department describes the blast balls as "thunder and lightning in the palm of your hand." It is a weapon designed to terrorize individuals into compliance.[4]

98.     In the same video, the Seattle Police Department admits blast balls are not to be thrown into crowds, but to the side of a crowd to move people in a direction, to "herd them into escape routes." Defendants, however, implemented a plan on May Day to throw grenades indiscriminately into crowds without making a prior dispersal order. Defendants deployed grenades without warning and without giving clear directions to the crowd about which direction to go, the speed in which they must travel, or why the grenades were being deployed. Defendants also implemented a plan to target blast balls as weapons against specific individuals.

99.     Defendants' actions on May Day were ratified by Chief Kathleen O'Toole. O'Toole professed to be shocked—not by police violence against peaceful protesters,

---

[4] http://blutube.policeone.com/videos/935703812001-blast-ball-lesslethal-crowd-control/

FIRST AMENDED COMPLAINT – Page 15

1    but by criticism of that police violence by City Council members, the press, and

2    citizens.[5]

3         100.    Defendants' actions were also ratified by Wilske and Fowler, on social

4    media, in the press, and before the City Council.

5         101.    Defendants' actions are consistent with their actions against other non-

6    violent protestors. On Martin Luther King Day in 2015, Seattle police officers pepper-

7    sprayed individuals who were following police orders. One individual was talking on

8    his cell phone and walking toward a sidewalk as an officer pepper sprayed him.[6] The

9    Seattle Police Department's decision to support officers who engaged in this behavior

10   shows deliberate indifference to the rights of peaceful protestors.

11        102.    On May 1, 2013, Jurkowski also sustained injuries while providing

12   medical care to demonstrators. She was following police orders and was injured when

13   an officer used his bicycle as a weapon against her. Other medics were also injured at

14   this event, some more severely than Jurkowski.

15        103.    Defendants will try to justify their actions. They will point to property

16   damage. Defendants will claim that three officers were injured in the "riots."[7]

17   Discovery will show that at least two of these injuries were likely caused by the police

18   themselves, through accidents or friendly fire.

19        104.    Discovery will also show, as Council member Harrell declared, that the

20   police violence came before the "riot" began and the police injuries occurred only after

21   the police themselves began using their weapons.

22

23   [5] http://spdblotter.seattle.gov/2015/05/06/chief-otoole-shocked-and-disappointed-by-councilmember-harrells-statements-all-force-remains-under-review/. *See also*

24   http://www.king5.com/story/news/local/seattle/2015/05/01/may-day-friday-coverage/26724049/ (O'Toole stating that officers were "very professional" in how they handled May Day.

25   [6] http://slog.thestranger.com/slog/archives/2015/01/28/watch-seattle-police-pepper-spray-teacher-jesse-hagopian-on-mlk-day

26   [7] http://www.komonews.com/news/local/Police-shadow-black-clad-protestors-as-they-march-through-Seattle-streets-302270231.html

FIRST AMENDED COMPLAINT – Page 16

LAW OFFICES OF
**HARRY WILLIAMS L.L.C.**
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
TELEPHONE: (206) 769-1772

105.     Targeting peaceful protesters with grenades and other weapons is not an acceptable response to the alleged illegal or violent acts of a small number of people.

## CAUSES OF ACTION

## COUNT 1: 42 U.S.C. § 1983

*(Against all Defendants for Violation of Jurkowski's First Amendment rights)*

106.     Defendants' actions in targeting, harming, and intimidating Jurkowski infringe on her right to speak by discouraging her from participating in protests, and by forcing her to stop participating in the 2015 May Day protest. These actions were taken under color of law and without lawful justification.

107.     Jurkowski was engaged in activity protected by the First Amendment.

108.     Jurkowski was a non-violent observer and participant in a political protest. Jurkowski was not resisting a lawful order.

109.     No use of force against Jurkowski was justified.

110.     Defendants targeted Jurkowski while she was engaged in protected activity and because she was engaged in protected activity. Police targeted her because she was exercising her rights and because of the content of her speech. By targeting her with grenades and shooting her, the defendants made it impossible for Jurkowski to continue her First Amendment activities. Jurkowski, like any person would be, was dissuaded and discouraged from continuing her First Amendment activities when grenades were thrown at or near her. Indeed, because of her injuries, she was unable to continue her First Amendment activities.

111.     Jurkowski should be compensated in an amount determined by a jury. Punitive damages should be awarded against the individual defendants.

FIRST AMENDED COMPLAINT – Page 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## COUNT 2: 42 U.S.C. § 1983

*(Against all Defendants for Violation of Jurkowski's Fourth and Fourteenth Amendment rights)*

112.    Jurkowski was a non-violent observer and participant in a political protest. Jurkowski was not resisting a lawful order.

113.    No use of force against Jurkowski was justified.

114.    Defendants' actions in hitting Jurkowski with a grenade and then shooting her violated her right to be free of excessive force, unreasonable searches and seizures, and her due process right to be free of punishment without process. These actions were taken under color of law and without lawful justification.

115.    Each individual defendant ordered, authorized, supervised, approved, or ratified the use of excessive force; failed to intervene to prevent the use of excessive force by other officers although they had the opportunity to do so; and/or were an integral part of the use of excessive force.

116.    Jurkowski should be compensated in an amount determined by a jury. Punitive damages should be awarded against the individual defendants.

## COUNT 3: 42 U.S.C. § 1983

*(Against all Defendants for Violation of Donny-Clark's First Amendment rights)*

117.    Defendants' actions in targeting, harming, and intimidating Donny-Clark infringe on his right to speak by discouraging him from participating in protests. These actions were taken under color of law and without lawful justification.

118.    Donny-Clark was engaged in activity protected by the First Amendment.

FIRST AMENDED COMPLAINT – Page 18

119.    Donny-Clark was a non-violent observer and participant in a political protest. Donny-Clark was not resisting a lawful order.

120.    No use of force against Donny-Clark was justified.

121.    The police targeted Donny-Clark while he was engaged in protected activity and because he was engaged in protected activity. Police targeted him because he was exercising his rights and because of the content of his speech. By targeting him with grenades, the defendants discouraged Donny-Clark from continuing his First Amendment activities. Donny-Clark, like any person would be, was dissuaded and discouraged from continuing his First Amendment activities when grenades were thrown at or near him. He left the May Day protest earlier than he otherwise would have.

122.    Donny-Clark should be compensated in an amount determined by a jury. Punitive damages should be awarded against the individual defendants.

## COUNT 4: 42 U.S.C. § 1983

*(Against all Defendants for Violation of Donny-Clark's Fourth and Fourteenth Amendment rights)*

123.    Donny-Clark was a non-violent observer and participant in a political protest. Donny-Clark was not resisting a lawful order.

124.    No use of force against Donny-Clark was justified.

125.    Defendants' actions in hitting Donny-Clark with grenades violated his right to be free of excessive force, unreasonable searches and seizures, and his due process right to be free of punishment without process. These actions were taken under color of law and without lawful justification.

126.    Each individual defendant ordered, authorized, supervised, approved, or ratified the use of excessive force; failed to intervene to prevent the use of excessive

FIRST AMENDED COMPLAINT – Page 19

LAW OFFICES OF
**HARRY WILLIAMS L.L.C.**
707 EAST HARRISON STREET
SEATTLE, WASHINGTON 98102
TELEPHONE: (206) 769-1772

force by other officers although they had the opportunity to do so; and/or were an integral part of the use of excessive force.

127.    Donny-Clark should be compensated in an amount determined by a jury. Punitive damages should be awarded against the individual defendants.

## COUNT 5: 42 U.S.C. § 1983

*(Against the City of Seattle for a pattern and practice of excessive force, violating the Fourteenth Amendment, on behalf of all plaintiffs)*

128.    By failing to properly train, supervise, or discipline officers, the City of Seattle has a pattern and practice, or policy or custom, of using excessive force against political protesters.

129.    By commanding, authorizing, encouraging, tolerating, and/or ratifying the use of excessive force by officers on May Day, the City of Seattle engaged in a pattern and practice of excessive force against non-violent protestors.

130.    As a result, Jurkowski and Donny-Clark have been injured.

131.    Jurkowski and Donny-Clark should be compensated in an amount determined by a jury.

## STATE LAW CLAIMS

## COUNT 6: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*(Against Defendants Wilske, Fowler, Garth Green, Bergmann, Yoon, Rees, Brown, and Grinstead, on behalf of all plaintiffs)*

132.    Defendants engaged in outrageous conduct by using grenades, or ordering that grenades be used, against peaceful, law-abiding participants in a demonstration.

FIRST AMENDED COMPLAINT – Page 20

LAW OFFICES OF
**HARRY WILLIAMS L.L.C.**
707 EAST HARRISON STREET
SEATTLE, WASHINGTON  98102
TELEPHONE: (206) 769-1772

133.    Defendants knew that the grenades were intended to cause panic and anxiety, and were intended to prevent peaceful participants from participating in First Activity.

134.    Defendants intentionally deployed the grenades, or ordered that the grenades be employed.

135.    As a result of the deployment of grenades, plaintiffs Jurkowski and Donny-Clark suffered severe emotional distress.

## COUNT 7: ASSAULT AND BATTERY

*(Against Defendants Waldorf, Bergmann, Yoon, Rees, Brown, and Grinstead, on behalf of all plaintiffs)*

136.    Defendants intended to deploy force that they knew could cause serious bodily injury.

137.    As a result of Defendants' actions, Jurkowski and Donny-Clark were afraid that they would be subject to immanent harm from Defendants' use of grenades and pepper ball guns.

138.    As a result of Defendants' actions, Jurkowski and Donny-Clark were actually harmed.

## DEMAND FOR RELIEF

Plaintiffs demand judgment against Defendant as follows:

    A.   Damages in an amount to be determined by jury;

    B.   Punitive damages in an amount to be determined by a jury;

FIRST AMENDED COMPLAINT – Page 21

1        C.  A permanent injunction prohibiting Defendants from using excessive

2            force against peaceful protesters;

3        D.  Costs of suit, including reasonable attorneys' fees, costs, and expenses

4            as provided by law; and

5        E.  Such other, further, and different relief as the nature of the case may

6            require or as may be determined to be just, equitable, and proper by

7            this Court.

8

9  DATED October 31, 2016.

                        LAW OFFICE OF HARRY WILLIAMS LLC.

10

11                 By  s/ Harry Williams IV
                        Harry Williams IV, WSBA #41020

12                     harry@harrywilliamslaw.com.
                     707 East Harrison

13                     Seattle, WA 98102
                     Telephone:  206.769.1772

14

15                  ***Attorney for Plaintiff***

16

17

18

19

20

21

22

23

24

25

26

FIRST AMENDED COMPLAINT – Page 22